UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
NICOLE PHILLIPS, Administrator of the Estate of
Richard G. Dinenny, deceased,

                                  Plaintiff,

  - against -

THE CITY OF MIDDLETOWN, a municipal
corporation, MIDDLETOWN POLICE OFFICER
GEORGE NEILSON No. 1152, in his official
capacity & individual capacity, MIDDLETOWN
POLICE OFFICER JASON BERMAN No. 1179,
in his official capacity & individual capacity,
MIDDLETOWN POLICE SERGEANT DAVID
FRANCK, in his official capacity & individual
capacity, and MIDDLETOWN POLICE OFFICER
JORDAN McINERNEY, in his official capacity &
individual capacity,

                                  Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 17-CV-5307 (CS)

Appearances:

Michael D. Meth
Meth Law Offices, PC
Chester, New York
*Counsel for Plaintiff*

Alex Smith
Corporation Counsel of the City of Middletown
Middletown, New York
*Counsel for Defendants*

Seibel, J.

      Before the Court is the motion for summary judgment of Defendants City of Middletown (the "City"), George Neilson, Jason Berman, David Franck, and Jordan McInerney (collectively, "Defendants"), (Doc. 63), as well as Plaintiff Nicole Phillips's motion for leave to file an untimely expert report, (Doc. 61). For the reasons discussed below, Defendants' motion for

summary judgment is DENIED without prejudice to renewal, and Plaintiff's motion for leave to file an untimely expert report is GRANTED.

## I. BACKGROUND

This case stems from a tragic incident in which Richard Dinneny, who was in possession of a pellet gun, was fatally shot by officers of the Middletown Police Department.

### A. Complaints and Motion to Dismiss

On June 13, 2017, Plaintiff, Dinneny's daughter, filed suit against the Defendants, among others, asserting claims under the Fourth, Eighth, and Fourteenth Amendments, as well as state law claims. (Doc. 1 ("Complaint") ¶¶ 52-81.) Plaintiff amended her complaint on October 17, 2017, advancing the same claims asserted in the original Complaint. (Doc. 30 ("Amended Complaint").)

Defendants moved to dismiss the Amended Complaint on March 5, 2018, (Doc. 39), and by Opinion and Order dated September 24, 2018, the Court granted the motion in part and denied it in part. (Doc. 45.) Familiarity with that decision is presumed. I held that the following claims survived:

> • Count I (excessive force) against Neilson, Berman, Franck, and McInerney (under the Fourth Amendment only);
> • Count VI (assault) against Neilson, Berman, Franck, and McInerney;
> • Count VII (battery) against Neilson, Berman, Franck, and McInerney; and
> • Count VIII (wrongful death) against Neilson, Berman, Franck, McInerney, and the City.

(*Id.* at 25-26.)

With regard to the excessive force claim, I explained that "[t]he Amended Complaint does not allege where Dinneny's gun was located when he raised his right hand, so it is not clear from the face of the Amended Complaint that the gun was in his hand or in close reach (or that the officers reasonably perceived it to be so)" when the officers shot him. (*Id.* at 9.) I further

2

explained, "Because the location of Dinneny's gun when he emerged from the Home the second time will be highly influential as to whether Plaintiff's excessive force claim succeeds or fails, the Court will permit the claim to go forward." (*Id.* at 11 (footnote omitted).)  But I was clear that Plaintiff's other theories of liability were not plausible and thus that "the excessive force claim will proceed only on the theory that the force was excessive because Dinneny did not have the gun and it was not close by." (*Id.* at 11-13.)  I cautioned that "[i]f Plaintiff cannot proceed on that theory in good faith, she should withdraw the claim." (*Id.* at 13; *see id.* at 11 n.5 ("If Dinneny was holding the gun, summary judgment for the officers will almost certainly be appropriate.").)

I also noted that in Plaintiff's original Complaint, she had alleged that Dinneny "did not drop the pellet gun" when ordered to do so and that he "began to raise his right hand pointing the pellet gun" when the officers shot him, (Doc. 1 ¶¶ 36-38), but those allegations were missing from her Amended Complaint.  (Doc. 45 at 9.)  As I explained,

> The omissions from the Amended Complaint suggest gamesmanship at its worst, considering that (1) the omission occurred after Defendants argued in a pre-motion letter that Plaintiff could not sustain an excessive force claim because Plaintiff alleged that Dinneny "began to raise his right hand pointing the pellet gun," and (2) Plaintiff did not explain in her opposition brief why the fact changed (despite Defendants having pointed out the "curious – if not disingenuous – omission").  Plaintiff's counsel is reminded that if he is indeed omitting a key piece of undisputed factual information in order to avoid dismissal, he and his client run the risk of being sanctioned for vexatiously multiplying the litigation.

(*Id.* at 10 n.4 (first quoting Doc. 25 at 1-2, then quoting Doc. 34 at 4 n.2).)

Following the Court's Opinion, Defendants answered, (Doc. 47), and the Court entered a case management plan, setting a fact discovery cutoff of April 15, 2019, and an expert discovery cutoff of June 17, 2019, (Doc. 46).  At Defendants' request, (Doc. 48), the discovery deadline was extended to July 31, 2019.  (Doc. 49.)  That was the only extension sought by either party.

B. **The Instant Motions**

On August 7, 2019, Defendants filed a pre-motion letter, (Doc. 57); on August 15, Plaintiff responded, (Doc. 60); and on August 22, the Court held a pre-motion conference, (Minute Entry dated Aug. 22, 2019).  At the conference, the Court set the following briefing schedule:  Defendants' motion was due on October 4, 2019; Plaintiff's opposition was due on November 4; and Defendants' reply was due on November 24.  (*Id.*)  The Court offered the parties the opportunity to bundle – meaning that they would serve the papers on each other on the due dates, but would not electronically file the papers on the docket until the motion was fully briefed – which the parties apparently agreed to do, as they submitted all of their motion papers on November 25, 2019, (Docs. 63-79).

Before the parties filed their motion papers, but after Plaintiff served his opposition brief, Plaintiff filed a motion for leave to file an untimely expert report.  (Doc. 61.)  Plaintiff sought to provide the expert report of Dr. Zhongxue Hua, a forensic pathologist and neuropathologist.  (*Id.* ¶ 2.)  In his report, Dr. Hua concluded

> [P]er [Dinneny's] autopsy report, [his] right wrist gunshot wound entered at the volar side (*aka*, palmar and anterior), with a bullet trajectory of backward (*i.e.*, toward the dorsal and posterior side), without appreciable upward or downward deviation, and without appreciable leftward or rightward deviation.  Therefore, at the moment of his right wrist gunshot wound, [Dinneny's] right volar wrist was directly facing the police officer(s), *i.e.*, [Dinneny's] right hand, which was holding a BB gun, should not, would not, and could not be in an implied shooting position . . . .

(Doc. 61 Ex. A ¶ 7.)

Dr. Hua's report was dated November 7, 2019, (*id.* at 2), more than three months after the deadline for expert discovery had passed.  Additionally, the report was prepared five days after Plaintiff's counsel signed his opposition to Defendants' summary judgment motion.  (*See* Doc. 76 at 17 (Plaintiff's opposition dated November 2, 2019).)

4

Plaintiff's counsel, Michael D. Meth, stated that the reason for the untimely expert report was "[his] lack of knowledge about how an expert could help in this area of the case," and that he "did not realize that a Forensic Pathologist's review of the autopsy report could provide a relevant expert opinion."  (Doc. 61 ¶¶ 11-12.)  Meth added that it was not until "all of the deposition testimony was laid out," as he was preparing his opposition to the summary judgment motion, "that it became clear that there were many contradictions regarding whether [Dinneny] was moving forward or backward, and whether his arm was raised at the time he was shot."  (*Id.* ¶ 13.)  But the last deposition in this case was taken on May 17, 2019.  (Doc. 61 ¶ 18; *id.* Ex. I.)  So it is unclear why, despite the looming expert discovery cutoff of July 31, it took Meth six months, (*see id.* ¶ 14 (Meth stating "it was not until November 3, 2019 that [he] realized that a Forensic Pathologist would be helpful")), to read the deposition testimony and determine that a forensic pathologist was necessary.

The Court deferred ruling on Plaintiff's motion for leave to file the expert report and allowed Defendants an opportunity to respond.  (Doc. 62.)  Defendants opposed Plaintiff's proposed motion, (Doc. 75 at 20-23),[1] and Plaintiff's counsel filed a reply affirmation, (Doc. 80).

## II.    DISCUSSION

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  When deciding whether to exclude untimely testimony, the Court should look to "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the

---

[1] Defendants requested leave to file a rebuttal report and depose Dr. Hua if the Court granted Plaintiff's request.  (Doc. 75 at 23 n.20.)

5

importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (internal quotation marks and alterations omitted).  While the first consideration heavily favors preclusion, the second through fourth factors militate against preclusion, and thus the Court will grant Plaintiff leave to serve Dr. Hua's report.

First, Plaintiff's counsel's explanation for the failure to comply with the disclosure requirements could not be weaker.  The deadline for expert discovery in this case was July 31, 2019, extended from June 2019 after Defendants, not Plaintiff, requested an extension.  (Doc. 49.)  Plaintiff's counsel blamed his untimely disclosure on the fact that he did not know he needed an expert report until he reviewed all of the deposition testimony in this case.  But depositions concluded by May 17, 2019, and Plaintiff's counsel has utterly failed to justify why it took him nearly six months to "la[y] out" all of that testimony and to then reach the conclusion that he needed an expert.  (Doc. 61 ¶ 13.)  This failure is all the more baffling given that I could not have been clearer in the September 2018 Opinion that the key issues in this case were the location of Dinneny's gun and whether his arm was raised at the time he was fatally shot.  Plaintiff's counsel should not have had to wait for the Defendants to be deposed – let alone six months after those depositions – to understand the importance of Dinneny's arm and hand placement at the time he was shot; indeed, that should have been clear from the moment counsel evaluated the case.  Even assuming, as Plaintiff's counsel suggests, that he needed to review all of the deposition testimony to determine that a forensic expert was needed, he has utterly failed to explain why it took him six months to review the deposition testimony.  And if he was not aware that experts can assist with such issues, perhaps he should not have taken the case or

should have sought a more experienced attorney's assistance. Thus, this factor weighs heavily in favor of exclusion.

That said, Dr. Hua's testimony may be of great importance, and thus the second factor militates strongly against preclusion. As noted above and in my previous Opinion, the location of Dinneny's arm prior to his death is a critical issue in this case, and an expert's testimony that his arm was not raised could be a key piece of evidence to support Plaintiff's claims. In a case like this – where police officers are alleged to have used excessive lethal force and the witness who is best suited to contradict the officers' accounts is dead – the Court must be mindful of the significance of any evidence that may tend to discredit the officers' story. *See O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003) (collecting cases). Even so, we do not know if the shot that hit Dinneny's wrist was the first shot, so even if Dr. Hua can say that Dinneny's hand was lowered with his palm facing the officers when he was shot in that wrist, Dr. Hua may not be able to shed light on whether or not Dinneny's hand was rising when Dinneny was first shot. Further, that his palm was facing the officers may not necessarily be inconsistent with his raising the gun. It may turn out that Dr. Hua's testimony will only invite speculation and will not raise an issue of fact.[2] But it seems prudent to consider that issue on a fully developed record, including (if Defendants wish) Dr. Hua's deposition and testimony from a defense expert. Accordingly, because at this stage it appears at least conceivable that Dr. Hua's testimony could be sufficient to establish a genuine issue of material fact precluding summary judgment on Plaintiff's claims, the second factor weighs against exclusion of the report.

---

[2] I also do not rule out that Dinneny's refusal to drop the gun may justify Defendants' use of force here regardless of whether he was raising his arm when he was shot.

Third, Defendants have been prejudiced but that prejudice can be ameliorated. Their inability to confront and rebut the expert testimony can be addressed by allowing them to depose Dr. Hua and obtain their own expert. Their wasted time and effort in litigating the motion for summary judgment can be addressed by having Plaintiff's counsel, who is plainly at fault, reimburse Defendants' fees and expenses for that needless work.[3] Under Federal Rule of Civil Procedure 37, the Court may, as a sanction for a discovery violation, "order payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A); *see Advanced Analytics Inc. v. Citigroup Glob. Mkts., Inc.*, 301 F.R.D. 47, 52 (S.D.N.Y. 2014) ("Federal Rules of Civil Procedure 16(f) and 37(c) give the court the authority to order the payment of reasonable expenses, including attorneys' fees, as a consequence for filing an expert report in violation of a schedule ordered by the court."). Doing so here will compensate the prejudiced parties and put them in the position in which they would have been absent the violation, as well as deter further discovery misconduct. *See Herman v. City of N.Y.*, 334 F.R.D. 377, 390 (E.D.N.Y. 2020) (in spoliation context, sanction should be designed to deter parties from engaging in discovery-related misconduct and restore the prejudiced party to the same position it would have been in absent the violation); *Roberts v. Bennaceur*, No. 12-CV-1222, 2015 WL 1471889, at *10 (D. Conn. Mar. 31, 2015) ("Sanctions may be imposed to . . . restore those parties to where they would have been absent the discovery violation . . . .") *aff'd*, 658 F. App'x 611 (2d Cir. 2016) (summary order); *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 461 (S.D.N.Y. 2002) (sanctions imposed to "restore [defendant] to the position it would have been absent the wrongdoing of [plaintiff]"), *stay denied*, 2002 WL

---

[3] Because of Plaintiff's untimely disclosure, Defendants will have to submit another round of summary judgment briefing after the belated expert discovery. Thus the initial round was a waste.

8

1380016 (S.D.N.Y. June 25, 2002). I therefore order Plaintiff's counsel – not Plaintiff – to pay Defendants' counsel the reasonable expenses incurred in preparing Defendants' summary judgment motion.

Fourth, a continuance is not necessary because no trial date has been set, and neither party is likely to be appreciably prejudiced by the delay, given that the Covid-19 pandemic and the resulting backlog will prevent this case from going to trial for many months.

On balance, despite Plaintiff's counsel's inexcusable conduct, I will not preclude Dr. Hua's testimony, on the conditions described above. This is a serious case, and I am reluctant to dismiss it if it is possible that relevant evidence exists that would be enough to get Plaintiff's claims to a jury. Because further factual development is necessary, Defendants' motion for summary judgment is denied without prejudice to renewal.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to file Dr. Hua's expert report is GRANTED. The Court extends the expert discovery deadline until October 23, 2020, but only for the limited purpose of Defendants deposing Dr. Hua and offering a rebuttal expert.[4] Defendants' motion for summary judgment is DENIED without prejudice to renewal. The parties shall send the Court a joint letter no later than October 30, 2020, proposing a briefing schedule for Defendants' renewed summary judgment motion, assuming Defendants still intend to make one. Defendants shall make a submission outlining the fees and expenses incurred in connection with the instant motion for summary judgment by August 13, 2020, and Plaintiff's counsel may respond by August 27, 2020. The Clerk of Court is respectfully directed to

---

[4] Dr. Hua's deposition shall take place by August 24, 2020. If Defendants choose to disclose a rebuttal expert, they shall do so by September 23, 2020. If Plaintiff chooses to depose Defendants' expert, she shall do so by October 23, 2020.

9

terminate the pending motions.  (Docs. 61, 63.)  Plaintiff's counsel is ordered to provide a copy of this Opinion and Order to Plaintiff.

**SO ORDERED.**

Dated: July 23, 2020
      White Plains, New York

                                                                        CATHY SEIBEL, U.S.D.J.